**Beatrice MUNSEY, Plaintiff in Error,**

**v.**

**Olin A. MUNSEY, Defendant in Error.**

**No. 39405.**

Supreme Court of Oklahoma.

Oct. 15, 1963.

Jack B. Sellers, Sapulpa, for plaintiff in error.

Fred Cunningham, Hobart, for defendant in error.

PER CURIAM.

Involved herein is the matter of the length of time plaintiff should pay his former wife the amount of $75.00 per month pursuant to a purported written property settlement agreement made with her which was approved by the trial court but which did not fix either the total number of payments to be made or the total amount to be paid.

The plaintiff was granted a decree of divorce from the defendant on the 17th day of September, 1958, upon the grounds of incompatibility. The parties had been married on September 7, 1951. No children were born to them. At the time of their marriage, the plaintiff was forty-eight years of age and the defendant was fifty-six years of age.

The terms of such agreement entered into by the parties prior to the filing of plaintiff's petition in the divorce suit were reflected in the decree of divorce which "confirmed and approved" the "property settlement agreed to as between the parties."

Such contract, as reflected in such decree, had a provision as follows, to-wit:

" * * * (T)hat plaintiff should pay to defendant the sum of $75.00 per month in payments of $37.50 upon the 1st and 15th day of each and every month as permanent alimony, beginning October 1, 1958."

The plaintiff complied with the agreement to pay the $75.00 per month for sixteen months. He then quit and some three months afterward the defendant filed an "Application for Citation-Indirect Contempt." After order had been made and citation issued, plaintiff answered such application, claiming that the decree was "void as to the alimony" for the reason "the court did not fix a definite amount ultimately to be paid."

Soon afterward, the defendant filed a motion to modify the decree of divorce as to alimony payments. Therein she stated:

"That the Court's order, through no fault of defendant, was void as to that portion of the order providing alimony in that said order did not set the total amount to be paid or a determined period of time during which said money would be paid. * * *"

She alleged that she was then "a healthy able-bodied female, aged sixty-five (65) years with a life expectancy of fifteen (15) years. * * *" She prayed a modification of the decree of divorce to make "provisions for alimony payments for a period of fifteen (15) years, attorney's fees and costs of this action. * * *"

Plaintiff in answer to such motion to modify, alleged, in part, as follows, to-wit:

"* * * (T)hat there has been a change of condition, since the granting of the divorce aforesaid, in that the Company with whom he is employed is no longer furnishing plaintiff a home, nor paying his utility bills. That plaintiff has remarried, and has purchased a Trailer-home in which to live, and is making payments thereon; that the only property he owns clear of indebtedness is a 1951 Model Ford Sedan."

In the hearing in the trial court on motion to modify, defendant testified that before her marriage to him, plaintiff was unable to save his money but that afterward she would take his pay checks to the bank, deposit same and pay the bills; that they were able to accumulate the furniture, funds and bonds to which reference is herein made.

In such hearing defendant sought to show that she used the money plaintiff gave her when the parties were separated to make the down payment on a house in Stillwater; that in making such purchase she relied upon the anticipated receipt of the $75.00 monthly payments; that she had two apartments for rent but which were vacant; that she was paying $65.00 per month to apply on the balance of principal and interest still owing on such property; and that she was in financial stress. She showed a life expectancy of fifteen years and stated that nobody 55 years of age would quit a job such as plaintiff had. She indicated she had figured to receive the $75.00 per month as long as plaintiff lived and was still so employed.

Plaintiff in such hearing, testified that he was, and had been for about thirty-five years, employed by an oil company as a pumper; that his salary was about $400.00 per month; that his take-home pay was about $325.00 per month; that the difference went for taxes, hospitalization insurance, retirement plan and bonds. On cross-examination, by his own attorney after having testified at call of defendant, he testified that he agreed to pay the defendant $50.00 per month alimony and she agreed to take it. He further testified:

"Q. What was your agreement to pay $50.00?

"A. After we agreed on the $50.00 deal her daughter and her man came out to the wells. Her daughter talked and cried for two hours. Finally she said if I would give her mother $75.00 a month she thought she could get by. I agreed to make it $75.00 a month as long as I was financially able. I told her if the company transferred me and moved me to town or didn't furnish me a place to live and I had to pay my own utility bills I couldn't make that payment. She agreed that when we got to that point we would do something about it."

Plaintiff further testified that he had remarried and had bought and was living in a trailer home; that he made payments of $66.83 per month on it and $20.00 per month for space for it and had to pay his own utility bills. He also testified that all the bonds which were bought for him by his employer from his payroll deductions were cashed in order to make the $75.00 per month alimony payments; and that he continued the payments seven or eight months after the oil company sold the house in which he had been living and after he had moved to town.

Plaintiff further testified as follows, to-wit:

"Q. Did you give her everything you owned at the time of the divorce?

"A. I gave her every last thing I had; money and furniture.

\* \* \* \* \* \*

"A. The money was $3600.00 in cash; and the furniture was worth $5,000.00."

Defendant, by the settlement agreement of the parties, also was permitted to keep two 40-acre properties she owned prior to her marriage to plaintiff and a 1956 Oldsmobile automobile which she said she bought with the proceeds from sale of her home in Shawnee.

After such hearing, the trial court rendered findings and judgment, in part, as follows:

"There was an agreement between plaintiff and defendant in connection with the original proceeding in this cause whereby plaintiff was to pay certain alimony to defendant, but the Court finds that the Journal Entry and Decree of Divorce heretofore executed by this Court under date of September 17, 1958, is erroneous in that the Court omitted fixing the sum and amount of alimony to be paid by plaintiff to defendant.

"That under the evidence in this case the amount of alimony should be fixed at the sum of $2,000.00 as of the date of September 17, 1958; plaintiff to be allowed credit on the said sum of $2,000.00 for any and all sums heretofore paid since said date of September 17, 1958. That the plaintiff has paid to defendant the total aggregate sum of $1,200.00, leaving a balance of $800.00 to be paid at the rate of $75.00 each month, payable $37.50 on the first and fifteenth of each and every month hereafter until the balance of $800.00 is fully paid."

Such judgment further ordered plaintiff to pay defendant's attorney an attorney's fee in the amount of $100.00.

In her appeal, defendant contends "The trial court was without authority to go beyond the terms of the property agreement entered into by and between the parties prior to the entry of the original divorce decree, and was confined to an enforcement of that agreement upon the motion filed by defendant."

In support of such contention, defendant cites several cases wherein the facts are not comparable to those in this case. We do not consider such cases to be in point as, in such cases the total amounts to be paid were fixed.

In Finley v. Finley, 174 Okl. 457, 50 P.2d 643, we held in the first and second paragraphs of the syllabus:

"A provision in a divorce decree awarding alimony without definitely fixing the total amount to be paid or the term during which the payments are to be made, although in conformity to a written stipulation, is void.

"Although a provision in a divorce decree awarding alimony without definitely fixing the amount to be paid or the term during which the payments are to be made is void, the question of alimony is nevertheless still pending before the court, and the court may correct the error by modifying said provision so as to make the period of payments, or the total amount thereof, definite and certain."

 The trial court had the parties before him as witnesses. He was in a position to observe their demeanor and to form first-hand impressions as to the facts. This Court is not in a position to say that the judgment of the trial court modifying its former judgment, in the respects with which we have dealt hereinabove, either evidenced an abuse of discretion or was clearly against the weight of the evidence.

The defendant next contends that the $100.00 attorney fee set by the court for her attorney was grossly inadequate. It is argued that counsel for defendant filed in the cause, two separate comprehensive pleadings, those pertaining to issuance of citation for contempt, and the motion to modify the original decree of divorce, and made appearances in open court, including one full day spent in the contested hearing from which this appeal arose.

 Defendant argues the reasonableness of her request for an attorney's fee in the amount of $500.00 for services rendered in the trial court. In the absence of evidence in the record concerning what would have been a reasonable fee, but considering the time and effort stated by counsel to have been expended by him, we have determined that such fee should have been fixed in the amount of $200.00. The trial court's judgment is modified to provide for a fee to defendant's counsel in that amount.

It is further directed that this modification of order fixing attorney's fee be entered as a judgment in the cause in The District Court of Kiowa County, Oklahoma, from which this appeal arose, and be enforced as any other judgment of that court.

Modified, and affirmed as modified.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.